IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| United States of America, **Plaintiff**, v. Gilmer Diaz-Jaramillo, **Defendant**. | CRIMINAL NO. 20-446-1 (RAM) |

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, U.S. District Judge

Pending before the Court is Defendant Gilmer Diaz-Jaramillo's ("Diaz-Jaramillo" or "Defendant") *Motion to Dismiss and to Supress [sic]* ("*Motion to Dismiss*" or "*Motion*"). (Docket No. 59). For the reasons set forth below, the Court **DENIES** Defendant's *Motion*.

I. BACKGROUND

Diaz-Jaramillo is a Colombian national who was indicted on December 17, 2020 for possession of a controlled substance onboard a vessel subject to the jurisdiction of the United States in violation of the Maritime Drug Law Enforcement Act ("MDLEA"). (Docket Nos. 3; 59 at 1). United States authorities detained Diaz-Jaramillo and his two Co-defendants in the high seas south of the Dominican Republic on December 10, 2020. (Docket No. 59 at 2). Reportedly, the Coast Guard recovered a total of 20 packages of

cocaine on the vessel and in the water immediately surrounding the vessel.[1] Diaz-Jaramillo and his Co-defendants purportedly did not make a claim of nationality for the vessel, thus it has been treated as a "vessel without nationality" pursuant to § 70502(d)(1)(B) of the MDLEA. Id. As a "vessel without nationality," it is subject to U.S. jurisdiction. *See* 46 U.S.C. § 70502(c)(1)(A).

On October 27, 2021, Diaz-Jaramillo filed the present *Motion to Dismiss*. (Docket No. 59). He argues that the MDLEA is unconstitutional, even as applied to stateless vessels such as his. Id. at 1. He also seeks to suppress the seized contraband, alleging that it was obtained through a violation of his Fourth Amendment right. Id. The Government filed a response on November 10, 2021. (Docket No. 62). It argues that Diaz-Jaramillo lacks standing to challenge his indictment under the MDLEA and that the MDLEA as applied to stateless vessels in the high seas, like Defendant's, is constitutional. Id. at 1. Diaz-Jaramillo filed a reply brief on November 17, 2021 and a supplemental brief in support of his *Motion to Dismiss* on March 8, 2022. (Docket Nos. 65 and 75, respectively). Defendant's supplemental brief points to two recent First Circuit cases that he contends support a dismissal of his indictment. (Docket No. 75 at 2).

---

[1] United States authorities allegedly saw Defendants jettison several bales of cocaine into the water when they were approached by the authorities. (Docket No. 59 at 2).

## II.  LEGAL STANDARD

**A. <u>Motion to Dismiss an Indictment</u>**

Pursuant to Fed. R. Crim. P. 12(b)(1), "[a] party may raise by pretrial motion any defense, objection or request that the court can determine without a trial on the merits." Moreover, it provides that "[a] motion that the court lacks jurisdiction may be raised at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). However, the power to dismiss an indictment pursuant to Fed. R. Crim. P. 12(b) is "reserved for extremely limited circumstances" because it "directly encroaches upon the fundamental role of the grand jury." <u>Whitehouse v. United States District Court</u>, 53 F.3d 1349, 1360 (1st Cir. 1995) (citing <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 263 (1988)).

A motion to dismiss must attack the facial validity of the indictment and not the government's substantive case. *See* <u>United States v. Ngige</u>, 780 F.3d 497, 502 (1st Cir. 2015) (citing <u>United States v. Stewart</u>, 744 F.3d 17, 21 (1st Cir. 2014)). When a defendant seeks an indictment's dismissal, "courts take the facts of the indictment as true, mindful that 'the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" <u>Ngige</u>, 780 F.3d at 502 (quoting <u>United States v. Savarese</u>, 686 F.3d 1, 7 (1st Cir. 2012)). "In general, an

indictment is adequate if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend and allows him to contest it without fear of double jeopardy." United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012) (citation omitted). The indictment "may use the statutory language to describe the offense, but it must also be accompanied by such statement of facts and circumstances as to inform the accused of the specific offense with which he is charged." Id. (citing United States v. Mojica-Baez, 229 F.3d 292, 309 (1st Cir. 2000)). Most notably, "the government need not put forth specific evidence to survive a motion to dismiss." Ngige, 780 F.3d at 502.

The courts' reticence regarding pretrial motions to dismiss indictments reaches cases where defendants contend subject matter jurisdiction is lacking. *See, e.g.,* United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2012) (quoting United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998))(alterations in original) ("[U]nless prosecutors have 'made what can fairly be described as a full proffer of the evidence [they] intend[ ] to present on a pretrial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment.'"). With few exceptions, a district court generally has subject matter jurisdiction over a federal criminal case "if the indictment charges that the defendant committed a crime described in a federal

criminal statute." United States v. González-Mercado, 402 F.3d 294, 300-01 (1st Cir. 2005) (quotation omitted).

## B. MDLEA

The MDLEA states that "[w]hile on board a covered vessel, an individual may not knowingly or intentionally . . . manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. § 70503(a)(1). A "covered vessel" includes "a vessel subject to the jurisdiction of the United States," id. § 70503(e)(1), which includes "a vessel without nationality," id. § 70502(c)(1)(A). A "vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel" is one of three types of "vessel[s] without nationality" listed in the MDLEA. Id. § 70502(d)(1)(B). Defendant does not contest that his vessel is a "vessel without nationality" under § 70502(d)(1)(B) and thus subject to U.S. jurisdiction under the MDLEA. (Docket No. 59).

Congress passed the MDLEA pursuant to its authority under the Define and Punish Clause of the Constitution. See United States v. Gutierrez-Moreno, 2022 WL 2827462, at *3 (D.P.R. 2022). The Define and Punish Clause imbues Congress with the "Power . . . To define and punish Piracies and Felonies committed on the high Seas, and

Offences against the Laws of Nations[.]" U.S. Const. art. I, § 8, cl. 10.

### III. DISCUSSION

#### A. Standing

As a preliminary matter, the Court discusses Defendant's standing to challenge the constitutionality of the MDLEA. The MDLEA itself states:

> A person charged with violating section 70503 of this title, or against whom a civil enforcement proceeding is brought under section 70508, does not have standing to raise a claim of failure to comply with international law as a basis for a defense. A claim of failure to comply with international law in the enforcement of this chapter may be made only by a foreign nation. A failure to comply with international law does not divest a court of jurisdiction and is not a defense to a proceeding under this chapter.

46 U.S.C. § 70505.

The Government argues that this provision of the MDLEA deprives Defendant of standing to challenge his indictment because his theory is that the MDLEA does not conform with international law. (Docket No. 62 at 3). However, the core of Defendant's argument is that because the MDLEA does not conform with international law, **it violates the United States Constitution**. (Docket No. 59). Given this nuance, the Court will evaluate Defendant's challenge to his indictment under the MDLEA.

## B. **Constitutionality Under the Define and Punish Clause**

Defendant's theory is that the MDLEA is unconstitutional because the Framers did not intend to give Congress the power to punish crimes such as drug trafficking; they only imbued Congress with the authority to punish crimes under "customary international law." (Docket Nos. 59 at 8; 75 at 5). Another recent First Circuit case, United States v. Aybar-Ulloa, has already addressed the MDLEA's conformity with international law as applied to § 70502(d)(1)(B) stateless vessels, like Defendant's. *See* 987 F.3d 1 (1st Cir. 2021)). The First Circuit held:

> [P]rosecution in the United States for drug trafficking on a stateless vessel stopped and boarded by the United States in waters subject to the rights of navigation on the high seas violates no recognized principle of international law. To the contrary, international law accepts the criminal prosecution by the United States of persons . . . seized by the United States while trafficking cocaine on a stateless vessel on the high seas, just as if they were trafficking on a United States-flagged ship.

Id. at 3. The opinion then goes into further detail on why prosecution for drug charges under the MDLEA is consistent with international law. Id. at 9-13. The court also explains that "[a]lthough not a crime that gives rise to universal jurisdiction . . . drug trafficking has long been regarded as a serious crime by nearly all nations." Id. at 14 (citations omitted).

Earlier First Circuit caselaw also affirms the MDLEA's conformity with international law as applied to stateless vessels. *See, e.g.,* United States v. Matos-Luchi, 627 F.3d 1, 6 (1st Cir. 2010) ("[T]he MDLEA does not conflict with international law. For international law too treats the 'stateless vessel' concept as informed by the need for effective enforcement. Thus, a vessel may be deemed 'stateless,' and subject to the enforcement jurisdiction of any nation on the scene[.]"). Accordingly, the MDLEA as applied to stateless vessels in the high seas is not unconstitutional for failure to conform to international law.

### 1. Bellaizac-Hurtado

Defendant's first brief in support of this *Motion* relies almost exclusively on an Eleventh Circuit case that is neither binding on this Court nor supportive of Defendant's *Motion*. In United States v. Bellaizac-Hurtado, the Eleventh Circuit held that Congress exceeded its power under the **Offences Clause** when it criminalized drug trafficking **in another country's territorial waters** under the MDLEA. *See* 700 F.3d 1245, 1258 (11th Cir. 2012) (emphasis added). Defendant fails to note that Bellaizac-Hurtado involved U.S. jurisdiction over vessels found in another country's territorial waters, not the high seas. Defendant also fails to mention that the Eleventh Circuit limited its holding to Congress's authority under the Offences Clause, which is only part of the Define and Punish Clause. In fact, the Eleventh Circuit explicitly

stated that "Congress possesses additional constitutional authority . . . to restrict conduct on the high seas," including the Piracies Clause, the Felonies Clause, and its admiralty power. Id. at 1257. The court also noted that it has "always upheld extraterritorial convictions under [its] drug trafficking laws as an exercise of power under the Felonies Clause." Id. Thus, the case that Defendant seems to center his *Motion* around actually affirms the MDLEA's constitutionality as applied to stateless vessels in the high seas.

Defendant attempts to extend the Eleventh Circuit's analysis of the Offenses Clause in Bellaizac-Hurtado to the Felonies Clause. (Docket No. 59 at 9-10). However, this historical analysis is not transferrable. The Bellaizac-Hurtado Court analyzed the historical debate amongst the Framers around the word "define" specifically in the context of "Offenses against the Laws of Nations" and not the rest of the Define and Punish Clause. *See* Bellaizac-Hurtado, 700 F.3d at 1249-51. Hence the court concluded that it must "look to international law to ascertain the scope of power granted to Congress **under the Offenses Clause**." Id. at 1251 (emphasis added).

### 2. Early Supreme Court Caselaw

Defendant also misconstrues the Supreme Court's early caselaw discussing crimes committed in the high seas aboard non-U.S. vessels. (Docket No. 59 at 11-12). According to Diaz-Jaramillo, these early cases prove that Congress may only criminalize

"piratical" conduct, and that not even a crime as universally condemned as murder is punishable under the Define and Punish Clause unless it was under piratical circumstances. (Docket Nos. 59 at 11; 75 at 6). Defendant argues that since these early cases all involved "piratical conduct[,]" the Drafters meant to limit Congress's power to define and punish felonies in the high seas to those "intricately linked to [a] piratical nucleus of facts[.]" (Docket No. 75 at 12). In doing so, Defendant implies that the First Circuit erroneously upheld the MDLEA in Aybar-Ulloa, since that case did not involve a "piratical" crime. Id. at 6.

Defendant misreads these early cases. The Supreme Court indeed held that Congress lacks authority under the Felonies Clause to extend U.S. jurisdiction to felonies committed by foreign nationals on foreign vessels. *See* United States v. Palmer, 16 U.S. (3 Wheat.) 610, 632-34, 4 L.Ed. 471 (1818); United States v. Furlong, 18 U.S. (5 Wheat.) 184, 198, 5 L.Ed. 64 (1820). However, the Supreme Court was also clear that crimes such as murder committed by and against foreigners **on stateless vessels** can be prosecuted in the United States. *See* United States v. Klintock, 18 U.S. (5 Wheat.) 144, 151, 5 L.Ed. 55 (1820); United States v. Holmes, 18 U.S. (5 Wheat.) 412, 417-18, 5 L.Ed. 122 (1820). Judge Torruella summarized the historic rationale for this distinction in United States v. Cardales-Luna:

> In 1820, the Supreme Court in essence decided that stateless vessels, that is, vessels that were not registered or did not fly the flag of any nation, were considered to have "turned pirate," i.e., were engaged in piracy and the crew were pirates, and thus lost their status under international law of having the protection of any nation and were subject to the jurisdiction of whatever nation first acquired physical jurisdiction over the vessel and its crew.

632 F.3d 731, 747 (1st Cir. 2011) (Torruella, J., dissenting).[2]

### 3. Recent First Circuit Caselaw

Defendant's second brief in support of his *Motion* includes a final Hail Mary. While at the same time suggesting that Aybar-Ulloa was wrongly decided, Defendant argues that it and United States v. Dávila-Reyes, 23 F.4th 153 (1st Cir. 2022), signal a doctrinal shift in First Circuit MDLEA doctrine. (Docket No. 75 at 2). Under the protective principle, a nation can "define trafficking in controlled substances aboard vessels as a threat sufficient to justify an assertion of jurisdiction[.]" Aybar-Ulloa, 987 F.3d at 2-3 (citing United States v. Cardales, 168 F.3d 548, 553 (1st Cir. 1999)). Defendant posits that Aybar-Ulloa and Dávila-Reyes signal an erosion of the protective principle and a

---

[2] Judge Torruella dissented on grounds irrelevant to the quoted paragraph. He objected to the sufficiency of the government's evidence and to the application of the MDLEA to foreign vessels, not stateless vessels. He explicitly exempted stateless vessels from his conclusion regarding the MDLEA's unconstitutionality. *See* Cardales-Luna, 632 F.3d at 751 (Torruella, J., dissenting) ("Except for piracy, slave trading, and stateless vessels, the United States lacks UJ to apprehend and try foreigners for conduct on foreign vessels on the high seas for violation of United States criminal laws where there is no nexus to the United States.").

Case 3:20-cr-00446-RAM   Document 79   Filed 12/02/22   Page 12 of 14

Criminal No. 20-446-1 (RAM)                                        12

shift towards using international law as the appropriate basis for defining crimes punishable at sea. (Docket No. 75 at 2). He argues that both cases rejected the notion that drug trafficking is a universal jurisdiction offense. Id. at 15-16. Defendant thus concludes that the MDLEA is unconstitutional per recent First Circuit caselaw.

As a preliminary matter, the Court notes that Dávila-Reyes has since been vacated. *See* United States v. Dávila-Reyes, 38 F.4th 288 (1st Cir. 2022). However, even if Dávila-Reyes were still good law, Defendant would not prevail. Dávila-Reyes would have struck down the portion of the MDLEA that the First Circuit panel deemed conflicted with international law. *See* Dávila-Reyes, 23 F.4th at 195. The panel held that one of the three definitions for statelessness within the MDLEA conflicted with international norms. Id. However, the definition at issue was § 70502(d)(1)(C), not the type of stateless vessel involved here -- § 70502(d)(1)(B). Nothing in the vacated opinion suggests that the First Circuit was concerned about § 70502(d)(1)(B)'s conformity with international law.

Defendant also misconstrues Aybar-Ulloa, which is binding precedent. The Court has already addressed Aybar-Ulloa, which contradicts, not supports, Defendant's theory. In sum, that First Circuit opinion explicitly states that international law permits prosecution of drug trafficking aboard a stateless vessel in the

high seas, despite the fact that it is "not a crime that gives rise to universal jurisdiction[.]" Aybar-Ulloa, 987 F.3d at 14 (citations omitted). The Court need not delve into the fate of the protective principle because, as these cases show, prosecution of drug trafficking aboard a stateless vessel in the high seas is consistent with international law.

Defendant's challenge to the constitutionality of the MDLEA as applied to stateless vessels fails. None of his arguments about the Framers' intent, early Supreme Court caselaw, or recent First Circuit caselaw support such a challenge. "[I]f a person intent on drug trafficking on the high seas wants to be prosecuted in his own country should he be caught, he should sail under the country's flag." Id. at 9.

**C. Motion to Suppress**

Finally, the Court turns to Defendant's request that the seized contraband be suppressed for allegedly having been obtained in violation of his Fourth Amendment right. (Docket No. 59 at 1). Defendant fails to provide any evidence in the record supporting his version of events that supposedly establish a Fourth Amendment violation. Consequently, the Court is not able to determine whether such a violation occurred, especially in light of the Government's contestation of those events. Regardless, "the Fourth Amendment does not apply to activities of the United States against aliens in international waters." United States v. Vilches-Navarrete, 523

F.3d 1, 13 (1st Cir. 2008) (citing United States v. Bravo, 489 F.3d 1, 8 (1st Cir. 2007)); *see also* United States v. Clark, 266 F. Supp. 3d 573, 581 n.4 (D.P.R. 2017); United States v. Verdugo-Urquídez, 494 U.S. 259, 267 (1990).

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's *Motion to Dismiss*. (Docket No. 59).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of December 2022.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge